Hathaway, J.
I concur with the result reached in Justice YOUNG’s opinion, that a preinjury waiver signed by a parent on behalf of his or her minor child is unenforceable under longstanding Michigan law, for the reasons stated in parts I, II, and 111(A) of the opinion. This rule has been embodied in Michigan law for more than a century, and I find no compelling reason to depart from it now.
The public policy concerns expressed by the concurring opinions in the Court of Appeals presume that such waivers have been enforceable in the past and that if we suddenly stop enforcing them, children’s sports programs and activities and the businesses that run them will somehow be fundamentally undermined. However, the fact is that preinjury waivers have never been enforced or considered enforceable by the courts of this state.[1] Despite the fact that Michigan does not enforce these waivers, children still play football, engage in *259 sports activities, and go to bounce parties, just as they do in other states that do not enforce preinjury waivers.[2]
As noted in the remainder of Justice YOUNG’s opinion, there are compelling public policy reasons not to depart from this historic rule.[3] The purpose of the rule is to protect minor children. The rule merely provides the same protections for minor children in their preinjury status as in their postinjury status. The protections afforded injured minor children seeking redress have long been embodied in our court rules, see MCR 2.420, as well as in our probate codes, see, e.g., MCL 700.5102, a provision of the Estates and Protected Individuals Code. There is no question that a parent may not resolve his or her child’s claim or sign a release on the *260 child’s behalf without court approval after the child has been injured, and there simply is no justifiable reason to treat preinjury releases any differently. The historic rule is a sensible, logical, and well-reasoned approach that places greater emphasis on the protection of minor children than on hypothetical business concerns that have not materialized in this or any other state that has chosen to follow it.
Kelly, C.J., and Weaver, J., concurred with Hathaway, J.

 Please see the analysis contained in parts I, II, and 111(A) of Justice Young’s opinion.

 See, e.g., Williams v United States, 660 F Supp 699 (ED Ark, 1987); Hawaii Rev Stat 663-10.95 and 663-1.54 (2006); Leong v Kaiser Foundation Hosps, 71 Hawaii 240; 788 P2d 164 (1990); Douglass v Pflueger Hawaii, Inc, 110 Hawaii 520; 135 P3d 129 (2006); Meyer v Naperville Manner, Inc, 262 Ill App 3d 141; 634 NE2d 411 (1994); Wreglesworth v Arctco, Inc, 316 Ill App 3d 1023; 738 NE2d 964 (2000); La Civ Code art 2004 (2006); Costanza v Allstate Ins Co, 2002 US Dist LEXIS 21991 (ED La, 2002); Rice v American Skiing Co, 2000 Me Super LEXIS 90 (Me Super Ct, 2000); Hojnowski v Vans Skate Park, 187 NJ Super 323; 901 A2d 381 (2006); Childress v Madison Co, 777 SW2d 1 (Tenn Ct App, 1989); Munoz v II Jaz Inc, 863 SW2d 207 (Tx App, 1993); Fleetwood Enterprises, Inc v Gaskamp, 280 F3d 1069 (CA 5,2002); Hawkins v Peart, 37 P3d 1062 (Utah, 2001); Hiett v Lake Barcroft Community Ass’n, Inc, 244 Va 191; 418 SE2d 894 (1992); Scott v Pacific West Mountain Resort, 119 Wash 2d 484; 834 P2d 6 (1992); Johnson v New River Scenic Whitewater Tours, Inc, 313 F Supp 2d 621 (SD W Va, 2004).

 While I agree with the well-articulated public policy reasons expressed by Justice Young, I do not join in Justice Young’s assertion that the rule prohibiting parental waivers can be circumvented by a parental indemnity agreement. This issue is not before the Court, and the assertion would be, at best, dicta. More importantly, if it had been an issue here, it should be recognized that a parental indemnity agreement would directly contravene the compelling policy reasons that exist for the historic rule.